GAJARSA, Circuit Judge,
concurring in part and dissenting in part.
I join the court’s decisions to vacate the judgment of infringement as to the '880 patent, to affirm infringement of the '574 patent, to affirm the judgment that the '574 and '711 patents are not invalid due to obviousness, and to remand the issue of obviousness of the '880 patent. However, I believe that the district court erred in failing to construe the claim term “destination address” and that Vonage’s proposed construction is substantially correct. I would therefore vacate the judgment of infringement of the '711 patent, and I dissent from the court’s judgment to the contrary.
Vonage proposed a definition for the '711 patent claim term “destination address” before the district court, arguing that the destination address must identify “a called device or service endpoint.”[1] *1316 However, the district court’s Markman order and its resulting jury instructions lacked any reference to this term. The only instruction to the jury regarding this claim term arose from a catchall directive: terms the court had left undefined “are to be given by you [the jury] their customary and ordinary meaning to a person of ordinary skill in the art.” Failing to construe this term was error, both because the district court was obligated to provide some guidance to the jury on this term and because Yonage’s definition is the correct one. Vonage should be entitled to a remand for further proceedings on infringement of the '711 patent.
A full understanding of the dispute between the parties on this claim term requires a brief foray into the technical details of Voice over IP (“VoIP”) calls. A VoIP call is placed over a “public packet data network,” in the parlance of the '711 patent’s written description — in practice, the call is placed using the Internet. In a typical VoIP telephone call, the caller and callee each have an Internet Protocol (“IP”) address, and the data packets comprising the telephone call are routed over the Internet between them.[2] This routing is more-or-less direct: like all Internet traffic, the packets pass through a variety of network routers on their way to their destination, but they are preferably sent along the shortest or otherwise most efficient path the Internet is able to provide. In some cases, however, this form of direct connection is not possible. For instance, if one or both of the parties to the conversation has a NAT, or “network address translation,” device between it and the rest of the Internet, technical limitations may prevent a direct Internet connection between the two conversants from being formed. In these cases, Vonage provides an “RTP relay” server to which both parties connect and which relays traffic from caller to callee and vice versa.
When an RTP relay is interposed into the call, the IP address provided to the calling computer is that of the relay, not that of the called computer. Verizon asserts that in such a case, the address of the relay is the “destination address” as that term is used in the asserted claims of the '711 patent. Vonage disagrees, arguing that because the RTP relay is not the final destination of the data making up the call, the RTP relay’s address cannot be the destination address. The called computer is not provided with a “destination ad *1317 dress” under Vonage’s definition, so if Vonage prevails on this claim construction issue it would likely be entitled to a finding of no literal infringement of the asserted '711 patent claims.
As the above discussion should illustrate, the dispute between the parties on this term is a subtle, technical, and substantial one. The parties do not dispute that the data in an RTP-relayed call has its final destination at the callee’s computer, but that the individual IP packets sent from the calling computer have as their destination the RTP relay. Whether this arrangement embodies the “destination address” limitation entirely turns on what the scope and meaning of the term is. In the face of such a claim interpretation dispute, it is the duty of the court to resolve the issue. See Markman, 52 F.3d at 979 (“[I]n a case tried to a jury, the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim.” (emphasis added)). The district court here did not meet that obligation. Nowhere in its Markman order is the term “destination address” mentioned. The district court’s “customary and ordinary meaning” instruction essentially delegated to the jury the task of construing this claim term — • without guidance from the bench, the jury was directed to impose its own definition on unconstrued terms. Especially when parties request that the court construe a claim term — as Vonage did here — such delegation is improper.
The district court’s error in failing to construe the term “destination address” would have been harmless if Vonage’s proposed limiting definition lacked merit. However, I would conclude that Vonage has correctly stated the definition of the term: a “destination address,” as that term is used in the '711 patent, is the address of the endpoint of a call. The examples supplied in the patent’s written description all speak to the “destination” or “destination address” as being that of the actual called party. For instance, the patent references “different destinations of roaming subscribers,” '711 patent col.4 ll.15-16 (emphasis added), and “determination of the status of a destination terminal,” Id. col.5 ll.24-25. A concrete example notes:
In the preferred embodiment, the domain name server transmits different destination address information (IP address and/or telephone number) depending on which of two or more time windows covers the time of arrival of each translation request. In this manner, the customer can have the server return different address information at different times of the day, week or month. As a result, parties seeking to communicate with someone having one name on the network, actually receive instructions to communicate with two or more alternate destinations at different times. For example, the communications might go to the customer’s office during office hours and to the home at other times.
Id. col.5 ll.52-63 (emphases added). This passage is consistent with a reading of “destination address” in which the “destination” must be the endpoint of the call— here, the recipient’s home or office, as appropriate. This usage of “destination” in contradistinction to an intermediate position in the network is not confined to descriptions of the preferred embodiment. In a preliminary description of Internet architecture, the patent notes:
When a packet bearing a destination address leaves the source router, the router examines the first two numbers *1318 in a matrix table to determine how many hops are the minimum to get to the destination. It then sends the packet to the next router as determined from that table, and the procedure is repeated. Each router has a database table that finds the information automatically. This continues until the packet arrives at the destination computer.
Id. col.2 ll.26-33. This passage clearly distinguishes “routers” — intermediaries which simply pass network traffic along— from “destination eomputer[s]” at which the traffic comes to rest.[3] RTP relays function as routers. I acknowledge that an RTP relay does not function only as a “router” as that term is technically defined by the Internet Protocol, since the IP packets are addressed to the relay and, from the perspective of Internet routers, terminate at the relay. However, the relay does little more than an IP router does — it simply repackages the received data in a different IP packet and forwards it along to the ultimate destination. I do not believe there is a meaningful distinction within the context of this patent between a “router” and “relay.” The patent clearly distinguishes intermediary pass-through nodes on the network from the endpoints.
The majority points out that the patent describes an embodiment in which the “destination address” is only a telephone number, and argues that such an embodiment would be improperly excluded because “Vonage’s proposed construction requires that the destination be part of the ‘public packet data network.’ ” Maj. Op. at 1305-06. However, Vonage’s claim construction arguments did not need to focus on such a restriction, because the dependent claim actually asserted by Verizon explicitly requires that “the ... destination address include[ ] a numeric Internet Protocol address,” excluding phone-number-only embodiments. '711 patent claim 20. The thrust of Vonage’s argument was instead that “[wjith respect to the asserted claims of the '711 patent, the destination address is always the final endpoint in the public packet data network.” J.A. 68 (emphasis added). Even if Vonage’s proposed definition of “destination address” were technically flawed in some minor particulars, a court’s “task is not to decide which of the adversaries is correct” but rather to “independently ... declare the meaning of the claims.” Exxon Chem. Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1556 (Fed.Cir.1995). We have the power to approve those aspects of Vonage’s proposed claim construction which comport with the evidence while rejecting those aspects which do not.
The evidence here indicates that Von-age’s position on the endpoint versus intermediary issue — -the relevant issue actually *1319 disputed by the parties — is correct. Reading the term “destination address” in the context of its usage by the specification, see Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed.Cir.2005) (en banc), I conclude that the patentees meant to designate only the endpoint of the VoIP call. Verizon’s theory of infringement, to the extent that it identifies the address of an RTP relay as a “destination address,” is without merit under that meaning. I would vacate the judgment of infringement of the '711 patent, vacate the injunction to the extent that it references the '711 patent, and remand with instructions to conduct further proceedings under a definition of “destination address” limited to the ultimate destination of the VoIP data.[4]

. Vonage's example of a "service endpoint” presented to the district court was a voicemail server. At oral argument before this court, though, counsel for Vonage suggested that a voicemail server could not satisfy the "destination address” claim limitation. Oral Arg. *1316 at 13:14-13:53, available at http://www.cafc. uscourts.gov/ oralarguments/mp3/07-l240.-mp3. I would hold Vonage to the position it took at the district court and find the address of a server providing voicemail functionality to be a “destination address” when that address is provided to a calling party.

. Some VoIP calls have their ultimate destination at a number on the public switched telephone network ("PSTN”), the network descended from the Bell System that is used to complete the vast majority of telephone calls. Vonage serves calls to or from PSTN telephone numbers by making available "PSTN gateways” that are connected both to the Internet and the PSTN and which intermediate between VoIP packets on the Internet side and regular telephone calls on the PSTN side. Thus, a Vonage subscriber seeking to call a telephone number will contact a PSTN gateway over the Internet, request that the gateway place a call to that number, and then send VoIP packets to the gateway, which reconstructs the sound of the caller's voice and sends it over the telephone to the called number. A similar process occurs in reverse, and in this manner the Vonage subscriber is able to call or be called by a PSTN telephone number. The patent’s written description expressly contemplates embodiments involving a PSTN gateway whose IP address is part of the "destination address.” See '711 patent col.13 1.51 to col.14 1.15.

. The majority dismisses this passage as "not from a description of the invention of the '711 patent, but rather from a description, in the 'Background Art' section of the patent, of how the internet works in general.” Maj. Op. at 1304. I do not believe that the particular location of the passage within the specification matters. A patent specification is "a fully integrated written instrument,” Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed.Cir.2005) (en banc) (quoting Markman v. Westview Instruments, Inc., 52 F.3d 967, 978 (en banc)), in which words are assumed to have the same meaning throughout. Id. ("The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history.” (quoting Kinik Co. v. Int’l Trade Comm’n, 362 F.3d 1359, 1365 (Fed.Cir.2004))). While the quoted language does not specifically describe the patentee’s invention, it is in the patentee’s own words and therefore helpful in understanding what those words mean when they appear in the claims.

. As to the other disputed terms in the '574 and '711 patents, "translating,” "conditional analysis,” and "server,” I agree with the majority’s conclusions.